FILED
 2011 Mar-02  PM 02:46
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **STEPHANIE RAGLAND KELLY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 1:09-CV-2461-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF** } | |
| **SOCIAL SECURITY,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OF DECISION**

Stephanie Ragland Kelly ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability based upon an application for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Pursuant to the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.  Proceedings Below**

This action arises from Plaintiff's application for a period of disability and DIB, dated January 17, 2007, in which she alleged disability beginning December 11, 2006. (Tr. 86). Plaintiff's application was initially denied by the Social Security Administration on April 27, 2007. (Tr. 56). On May 11, 2007, the SSA received Plaintiff's request for a hearing before an administrative law judge ("ALJ"). (Tr. 62). Plaintiff's request was granted and on June 23,

2009, the ALJ conducted a video hearing from Memphis, Tennessee, with Plaintiff appearing in Anniston, Alabama.  (Tr. 39-54).

In his decision dated July 15, 2009, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2010, and has not engaged in substantial gainful activity since her alleged onset date of disability of December 11, 2006.  (Tr. 14).  The ALJ further determined that Plaintiff suffers from the following severe impairments: degenerative joint disease; morbid obesity; history of coronary artery disease; and cognitive disorder.  (Tr. 14).  However, it was the ALJ's conclusion that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. 404.1525 and 404.1526). (Tr. 14).

After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (Tr. 1-3), that decision became the final determination of the Commissioner, and therefore a proper subject of this court's appellate review under § 205(g) of the Act, which incorporates 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 38 years old and had received a certificate of completion from Sylacauga High School through their special education program.  (Tr. 42, 145). Plaintiff has previously worked as a certified nurse's assistant, dishwasher, daycare worker, and sewing machine operator.  (Tr. 43-45, 91).  Plaintiff alleges she became unable to work on December 11, 2006 due to lower lumbar back pain, pituitary gland tumor, high blood pressure, knee pain, leg pain, severe headaches, and spinal fluid leakage.  (Tr. 90).  Plaintiff listed her

prescribed medications as Dostinex, Lisinopril, potassium K10, and Tylenol sinus.  (Tr. 96). Plaintiff's daily living activities include watching television, doing some housework such as dishes, sweeping and mopping, cooking and doing laundry, visiting with friends and neighbors, and going to the store twice per week, as well as attending church regularly.  (Tr. 113-14, 300).

During the hearing, a vocational expert, Dr. William Crunk, was present and testified that Plaintiff's past work as a sewing machine operator is considered light work–semi-skilled; her work as a daycare worker required a light level of exertion, and was also classified as semi-skilled; and her work as a nursing assistant requiring medium work, and again classified as semi-skilled.  (Tr. 51).  Dr. Crunk was asked if jobs were available in the local or national economy considering a hypothetically individual of Plaintiff's same age, education, and past relevant work experience, able to do light work with the restrictions of no balancing, only occasional crawling, crouching, or keeling, involving no work around hazards and simple instructions.  Dr. Crunk replied in the affirmative, stating there were 2,500 jobs for basic inspectors inspecting material and garments; 2,900 jobs for light material handlers where people work on a processing line or assembly line taking items off the line; and 4,000 jobs across the State of Alabama for small parts assemblers.  When asked to consider the same hypothetical individual but restricted to doing sedentary work involving simple instructions, Dr. Crunk responded there would be jobs, somewhat similar to the jobs classified as light, but at a less physical demanding level.  Each job listed is an eight hour a day, forty hour per week job.  When asked what the absenteeism tolerance would be for the listed jobs, Dr. Crunk stated that a person missing two or more days on average a month would not be able to maintain work.  (Tr. 53).

On October 3, 2005, Plaintiff was hospitalized due to shortness of breath. (Tr. 227). A chest x-ray revealed the possibility of mild congestive heart failure. (Tr. 227). Plaintiff was discharged two days later with a diagnosis of congestive heart failure, hypertension, and hypertensive cardiomyopathy. Plaintiff was prescribed Lasix, potassium, Lisinorpril, and instructed to follow-up with Dr. Deichmann in one week. (Tr. 227).

In December 2006, Plaintiff saw Dr. Laura Deichmann for back pain and decreased range of motion, which improved with physical therapy. (Tr. 292-97). From early 2007 through 2009 Plaintiff presented to various physicians with further complaints of back and joint pain and was prescribed medication. (Tr. 303-09, 337-45, 352-85). In April 2007, a physical RFC assessment was conducted on Plaintiff and the examining physician, Dr. Carol Porch, found Plaintiff's allegations of back, knee, and leg pain to be only partially credible. Although Plaintiff sought care for these complaints, imaging did not establish a musculoskeletal medically determinable impairment. Further, on exam, Plaintiff had normal range of motion, no spasm, and normal gait. A medically determinable impairment of obesity was noted and considered in establishing limitations in Plaintiff's RFC. (Tr. 311-18).

On March 13, 2007, Plaintiff presented to Dr. Robert Klein for a psychological consultative examination. (Tr. 299-301). Plaintiff scored a verbal IQ of 69, a performance IQ of 68, and a full scale IQ of 66 on the Wechsler Adult Intelligence Scale-3rd Edition. (Tr. 300). Dr. Klein diagnosed Plaintiff with mild mental retardation and placed her global assessment of functioning ("GAF") score at 75, noting that her ability to function independently and to respond

4

appropriately in a work setting would be at a level consistent with her IQ if she were physically capable of performing her duties. (Tr. 301).

As part of the medical portion of the disability determination, a psychiatric review was conducted by Dr. Dale Leonard on April 26, 2007 in which Plaintiff was found to have the following: a mild degree of limitation in restrictions of her activities of daily living and difficulties in maintaining social functioning; a moderate degree of limitation as to difficulties in maintaining concentration, persistence, or pace; and no degree of limitation with episodes of decompensation, each of extended duration. (Tr. 329). Dr. Leonard concluded that Plaintiff does not have function adaptively at the level of mild mental retardation, as she is now the equivalent of a high school graduate in regular classes. (Tr. 331).

## II.  ALJ Decision

Disability under the Act is determined by employing a five-step test. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. "Gainful work activity" is work that is usually done for pay or profit. 20 C.F.R. § 404.1572(a), (b). If the claimant engages in substantial gainful activity, then they are not disabled regardless of the severity of their impairments. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that qualifies as "severe." 20 C.F.R. 404.1520(c). An impairment or combination of impairments qualifies as "severe" if it significantly limits an individual's ability to perform basic work activities. Third, the ALJ must

determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  If such criteria are met, the claimant is disabled.

If the claimant does not meet the requirements for disability under the third step, the ALJ must determine their residual functional capacity ("RFC"), which refers to their ability to do physical and mental work activities despite their impairments.  20 C.F.R. § 404.1520(e).  In making this finding, the ALJ considers all of the claimant's impairments, not only those that are severe.  The fourth step in the process determines whether the claimant has the RFC to perform the requirements of their past relevant work.  20 C.F.R. 404.1520(f).  If so, the claimant is deemed not disabled; however, if they are unable to do any past relevant work or do not have any past relevant work, the analysis proceeds to the fifth and final step.  At this step, the ALJ determines whether the claimant can do any other work in accordance with their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the Social Security Administration has the limited burden to show that other work exists in significant numbers in the national economy that the claimant can do, given their RFC and vocational factors.  20 C.F.R. § 404.1560(c).  If the ALJ finds the claimant is able to adjust to other work, they are not disabled.  If the claimant is not able to do other work and meets the duration requirement, they are found to be disabled. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability of December 11, 2006. (Tr. 14).  The ALJ found Plaintiff suffers from the following severe impairments: degenerative joint disease,

morbid obesity, history of coronary artery disease, and cognitive disorder. (Tr. 14). However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 14). The ALJ determined that Plaintiff's mental impairment does not meet the criteria for mental retardation under § 12.05B or § 12.05C of 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15).

      The ALJ found that Plaintiff has the RFC to perform a wide range of sedentary work, as well as the ability to follow simple instructions. (Tr. 17-18). Pursuant to the last steps of the process, the ALJ determined that Plaintiff is unable to perform any past relevant work; however, based on the testimony of the vocational expert (VE), Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. (Tr. 19-20). The ALJ thus concluded that Plaintiff is not disabled as defined by the Act, and therefore not entitled to a period of DIB. (Tr. 20).

### III. Plaintiff's Argument for Reversal

      Plaintiff argues that she carried her burden to establish entitlement to benefits, and that the decision of the ALJ is not supported by substantial evidence and contains a material error of law. (Pl.'s Mem. 2-3). In support of these arguments, Plaintiff first contends that she established presumptive disability by showing that she is mildly mentally retarded and that she suffers from an additional and significant work-related limitation separate from diminished intellectual functioning. (Pl.'s Mem. 3). Plaintiff argues that her history of special education and IQ score between 60 and 70, inclusive, meet the first prong of the 12.05C Listing criteria. (Pl.'s Mem. 5-7). In addition, because the ALJ found three distinct severe medical impairments

separate from mild mental retardation, Plaintiff contends that she satisfies the second prong for presumptive disability under 12.05C, and thus, the decision of the Commissioner should be reversed. (Pl.'s Mem. 8-9).

Second, Plaintiff argues that the ALJ's rejection of her presumptive disability showing is not supported by substantial evidence. (Pl.'s Mem. 9). She states that her "functioning in life is consistent with mild mental retardation" and contends that the record does not support the ALJ's finding that her activities of daily living and work history are inconsistent with limited adaptive functioning. (Pl.'s Mem. 9-10). Plaintiff alleges that because she satisfies the presumptive disability requirements in the 12.05C Listing and the ALJ did not rely upon any credible evidence (but only speculation), this court should award her disability benefits.

### IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against

the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.).

## V. Discussion

Plaintiff bears the ultimate burden of proving disability. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 42 U.S.C. § 423(d)(5). In the instant case, Plaintiff contends that she is disabled under the 12.05 Listing due to mental retardation and that she carried her burden by providing the relevant evidence that proved her alleged disability as a result of her mental and physical impairments. (Pl.'s Mem. 4-9). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the criteria of the 12.05 Listing. (Tr. 14). This finding is supported by substantial evidence, as the ALJ properly analyzed Plaintiff's impairments under the introductory material in the Listing and rejected that she was mentally retarded. (Tr. 15-16).

A.     **The ALJ Applied the Proper Legal Standards in Finding Plaintiff Did Not Meet Her Burden.**

Section 12.00 of 20 C.F.R. Pt. 404, Subpt. P, App. 1 puts forth categories of mental disorders that are considered presumptively disabling when objective medical evidence satisfies the specified criteria for a given listing. In the case of mental retardation, an impairment must satisfy the diagnostic description in the introductory paragraph of Listing 12.05 and one of the four sets of criteria (paragraphs A through D). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The diagnostic description of mental retardation in the introductory paragraph of 12.05 states that it "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Paragraph C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at 12.05C. Plaintiff argues that her IQ score as well as her other physical impairments establish presumptive disability under Listing 12.05 and that the ALJ erred in rejecting this premise. (Pl.'s Mem. 7-9).

The ALJ found that Plaintiff had the physical impairments of degenerative joint disease, morbid obesity, and history of coronary artery disease, which satisfy the second prong of Paragraph C. (Tr. 14). However, the ALJ found that Plaintiff's mental impairment did not meet or medically equal the first prong of 12.05C, although Plaintiff scored a verbal IQ of 69, a

performance IQ of 68, and a full scale IQ of 66 on the Wechsler Adult Intelligence Scale-3rd Edition. (Tr. 14-15).

The ALJ did not err in finding that Plaintiff failed to meet her burden of satisfying the mental retardation criteria. The final conclusion of whether a claimant meets a listing is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(2); 61 Fed. Reg. 34471, 34472 (1996). In addition, a "valid IQ score is not conclusive of mental retardation when the IQ score is inconsistent with other evidence in the record about [Plaintiff's] daily activities." *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 (11th Cir. 2006) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)). If a claimant does not show diminished adaptive functioning as required by the diagnostic description in the introductory paragraph of 12.05, substantial evidence may support a finding that she does not meet the requirements of mental retardation, despite an IQ in the range of 12.05C. *See Humphries v. Barnhart*, 183 Fed. Appx. 887, 889 (11th Cir. 2006). The ALJ therefore applied the proper legal standards in his finding that Plaintiff did not meet the criteria required by Listing 12.05.

B.     **Substantial Evidence Supports the ALJ's Decision.**

The ALJ's decision that Plaintiff did not meet or medically equal the criteria in Listing 12.05C is supported by substantial evidence and thus is due to be affirmed. Although Plaintiff's IQ scores meet the range of 12.05C, the ALJ determined that Plaintiff's "actual activities of daily living, work history, and achievement of a certificate as a nurse's aid are inconsistent with the limited adaptive functioning" required by Listing 12.05. (Tr. 15). The ALJ pointed to Plaintiff's daily activities of doing various household chores such as laundry and cooking, going to stores

independently, visiting neighbors, and attending church regularly (Tr. 14, 113-14, 300), as well as to Plaintiff's achievement of earning a nurse's aid certificate and her previous work as a nurse's aid as evidence that Plaintiff did not have the limited adaptive functioning required for a finding of mild mental retardation.  (Tr. 14-15).

In addition, the ALJ's rejection of Dr. Kline's diagnosis of mild mental retardation was proper.  (Tr. 299-301).  Mere diagnosis of a listed impairment is not sufficient to meet the requirements of 12.05. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th. Cir. 1991). In addition to administering the IQ test, Dr. Kline assigned Plaintiff a GAF score of 75–a score that represents only slight impairments in school, social, or occupational functioning.  (Tr. 14, 18, 301). Additionally, the ALJ noted that none of the other physicians who examined Plaintiff mentioned mental limitations in their records.  (Tr. 15).

Finally, the ALJ considered the opinion of the State Agency psychological consultants who limited Plaintiff to following simple instructions based on her moderate limitations in concentration.  (Tr. 18, 329).  This is consistent with the VE's determination that Plaintiff's jobs fell into the semi-skilled category.  (Tr. 51). The ALJ's consideration of these other factors was proper, as even valid IQ scores cannot be considered isolated from other factors when they are inconsistent with other evidence of daily behavior. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th. Cir. 1992). The ALJ concluded that Plaintiff did not satisfy Listing 12.05 based on the evidence in the record.  The ALJ followed the correct legal standards and his findings are supported by substantial evidence. Therefore, his decision is due to be affirmed.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this      2nd       day of March, 2011.

_____
 **R. DAVID PROCTOR**
 UNITED STATES DISTRICT JUDGE